THE PEOPLE OF THE STATE OF NEW YORK, Plaintiff, v. ABEL A. HAZEN and Others, Defendants.

Supreme Court, Sullivan County, July 28, 1928.

Taxation — tax title — State claims title to land in question under fore-closure of mortgage — defendant claims title under sale of land to pay assessment levied in behalf of turnpike company — assessment was made prior to mortgage foreclosure proceedings — tax title is superior.

The plaintiff, the State of New York, seeks to recover the possession of certain land and bases its title on an alleged sale in proceedings to foreclose a mortgage made to it, which sale was made in 1822. Prior to the said foreclosure sale an assessment was made against the land in question in favor of a turnpike company. Following a default in the payment of the assessment, the property was sold but the deed on that sale was not given until after the foreclosure sale. No attempt was made by the owners or purchaser on foreclosure to redeem the property. The tax title is superior to that of the title acquired by the State under the foreclosure proceeding. A purchaser's title at a tax sale is absolute and prior to a mortgage subject only to the right of the mortgagee to redeem from the tax sale.

MOTION by defendants to dismiss complaint in action to recover real property.

Albert Ottinger, Attorney-General [Eric J. Lake, Deputy Assistant Attorney-General, of counsel], for the plaintiff.

William H. Holmes [Ellsworth Baker of counsel], for the defendants.

RUSSELL, J. The People of the State of New York commenced eight separate actions against the defendants, Abel A. Hazen and others, all of which have been consolidated by the stipulation of the parties to the several actions and their attorneys. These actions were tried before the court without a jury at the May Trial Term, 1928, in Sullivan county. The immediate action tried was that against Abel A. Hazen and it is understood that the judgment in this action is to be binding in the several consolidated actions.

The object of these actions is to recover real property of which the State claims to be the owner and which is now in the possession of these several defendants. The law involved in the case is that which applies to actions commonly known as ejectment actions.

The real property involved is situated in the town of Highland, Sullivan county, and consists of forty-one and sixty-six one-hundredths acres and is a part of what is known as the Minisink patent. It includes a part of Washington lake. A portion of this forty-one acre parcel has been in the possession of the defendants, and buildings have been erected thereon.

The plaintiff has never been in actual possession of this property, but its claim is that it has had constructive possession since it

received title thereto on October 16, 1822. Its claimed title is based upon the foreclosure of a mortgage given by one Smith Cogswell and wife, for the sum of $4,377, on May 16, 1814, to the People of the State. This mortgage was registered by the Master in Chancery, May 17, 1814, and is recorded in book 2 of State Mortgages at page 375 in the office of the Secretary of State. The mortgagor defaulted in the payment of this mortgage and the State commenced foreclosure proceedings with the result that the property described in the mortgage was bid in by the Attorney-General and in turn released by him to the People of the State, October 16, 1822. This release is recorded in the office of the Secretary of State in book 2 of Releases at page 194. Although the mortgage in question recites that the mortgagor obtained his title to the mortgaged premises from one James Kane, who in turn received it from George Clark, it nowhere appears in the evidence from any record title or proof of possession that Smith Cogswell ever was the owner of the mortgaged premises.

Assuming, as we must, the legality of the mortgage foreclosure proceedings and the release of the Attorney-General to the State, the State received no better title to the premises in question than the mortgagor and mortgagee had at the time the mortgage was given. This has been the law from time immemorial and is now incorporated in section 1085 of the Civil Practice Act which provides: " A conveyance upon a sale made pursuant to a final judgment in an action to foreclose a mortgage upon real property vests in the purchaser the same estate only that would have vested in the mortgagee if the equity of redemption had been foreclosed. Such a conveyance is as valid as if it was executed by the mortgagor and mortgagee.   *   *   * "

The plaintiff bases its sole right to maintain this action upon the title received by it through these foreclosure proceedings and that such title is superior in all respects to the title claimed by the defendants. The State must succeed in this action, if at all, upon the strength of its own title and not upon the weakness of the title of the defendants. The State having failed to show even title or possession in the mortgagor, I am inclined to think that its record title is not sufficient to succeed in an action of this character. However, if I am in error in this conclusion, I think the State is not entitled to the judgment it asks, for the following reasons:

It appears from the evidence that the Mount Hope and Lumberland Turnpike Road Company was incorporated in 1812, and in 1815 said incorporation was revived by chapter 161 of the Laws of 1815 and this corporation was given until December 1, 1825, to complete its road. By an act of the Legislature, passed April

11, 1817 (Chap. 214), authority was given said company for the location of its road; provision made for the appointment of commissioners, etc., and an assessment area fixed and provision made for the sale of lands within such area, if the tax assessed should not be paid. This assessment area included the forty-one acres of land in question in this action. Assessments were made under the authority given. About May 17, 1820, default was made in the payment of these assessments by the then owner, who was Smith Cogswell, if the claim of the plaintiff is correct, because he gave the mortgage to the State which was afterward foreclosed and through which the State now claims to be the owner. The assessments referred to were made on or about May 17, 1820, and because of the default mentioned, the property was sold at public sale in the village of Goshen, by the duly authorized commissioners, to one John Boothe who received from the commissioners a certificate of tax sale, and on November 1, 1822, the purchaser received a title deed to the premises which was recorded in Sullivan county, February 28, 1823, in book 4 of Deeds at page 137. The execution and delivery of this deed took place more than two years after said tax sale and after the time to redeem had expired. On March 21, 1821, by special act of the Legislature, all prior acts of said commissioners were ratified and confirmed. It does not appear from the evidence that any attempt was ever made by the mortgagor, Cogswell, or by the plaintiff as mortgagee, to redeem this property from these tax sales. No question is here made concerning the regularity of these tax proceedings and the sales thereunder.

The mortgage foreclosure proceedings were commenced August 10, 1822, and the release to the State was given, as before stated, October 16, 1822, about fourteen days before the tax deed to Boothe was executed and delivered. Plaintiff argues that because it received this release before Boothe received his deed its title became fixed and determined and is superior to that of Boothe under his tax deed. I do not regard this point of time as controlling. There has been an unbroken chain of title through various recorded conveyances, originating with Boothe, to the present defendants, who are now in possession of these premises and whose title is based upon this original conveyance to Boothe by the commissioners of the Mount Hope and Lumberland Turnpike Road Company.

It is stated by Wiltsie on Mortgage Foreclosure (Vol. 1 [4th ed.], § 390) that " It is a universal principle of law that unpaid taxes are a lien upon the real estate against which they are assessed prior to mortgages, judgments and all other incumbrances. When real estate is sold for the satisfaction of unpaid taxes, the purchaser

41

likewise acquires a title that is good against all pre-existing incumbrances to the extent of his purchase price, unless divested by an incumbrancer redeeming." It must be borne in mind that the title in Boothe under this tax sale was initiated when he purchased the property and received his certificate, although not final and conclusive until after the period of redemption had expired and the tax deed delivered to him. It is the law that a purchaser at a tax sale will not be affected by the subsequent foreclosure of a mortgage to which action he is not made a party. (*Becker* v. *Howard,* 4 Hun, 359; affd., 66 N. Y. 5.)

It is well settled that a purchaser's title at a tax sale is absolute and prior to a mortgage, subject only to be redeemed by the mortgagee. The present law of this State provides that the decree of sale in mortgage foreclosure proceedings shall direct the referee to pay all outstanding liens for taxes, assessments and water rates, and it is, therefore, no longer necessary to make such lienors parties defendant in foreclosure proceedings.

I regard the case of *Becker* v. *Howard* (*supra*) and the principles there enunciated as applicable to the facts in the instant case. In that case the plaintiff claimed to be the owner of the premises under a deed received upon the foreclosure of a mortgage. Defendants' title was founded upon a certificate of sale for non-payment of taxes and a subsequent deed and the court held that the purchasers at the tax sale " had an initiate right to a deed thereof, provided the same was not redeemed, according to the statute, before the expiration of the two years from the date of their certificate, which period expired November 24th, 1868." It also held that such tax purchaser had a paramount title to that of the purchaser upon the mortgage foreclosure sale and was not affected by the foreclosure of the mortgage and the sale of the mortgaged premises to the plaintiff. The principles laid down in the case of *Aubuchon* v. *New York, N. H. & Hartford R. R. Co.* (137 App. Div. 834, 836) as applying to the requisite proof in ejectment actions and relied upon by defendants are additional reasons why the plaintiff cannot succeed in this action.

Some evidence was offered concerning adverse possession by the defendants, but was later abandoned and the court has given no consideration to that question. Upon the evidence in this case, the plaintiff has failed to prove that it has any right to the premises in question superior to that of the defendants.

Defendants' motion at the close of the evidence for a dismissal of the complaint on the ground that the plaintiff has failed to prove a cause of action should be granted.

Submit order and findings.